## Roeser, Appellants, v. German National Building and Loan Association.

*Building and loan associations—Illegal premium—Usury—Interest.*

Where the by-law of a building and loan association provided that
the premiums on all loans "shall be fixed at fifty cents per month for
each $100 borrowed," and at a regular and open meeting of the board
of directors a member, through one acting for him and by his authority,
bid a premium of that amount and was awarded the loan he applied
for, without any other bid having been made, the court below held that
the monthly premiums paid were illegal and usurious because they
were not determined by competitive bidding, and that in the account-
ing between him and the association upon repayment of the loan the
borrower was entitled to have them credited upon the loan, but was
not entitled to have them credited as of the date of payment, nor to
interest on them as of that date.  *Held,* by divided court on the appeal
of the member, the association not appealing, that the decree stating
the account and crediting the payments as of the date of the decree,
should be affirmed.

Argued May 10, 1906.  Appeal, No. 101, April T., 1906, by
plaintiffs, from decree of C. P. No. 2, Allegheny Co., April T.,
1905, No. 537, on bill in equity in case of John J. Roeser et al.
v. German National Building and Loan Association of Pitts-
burg.  Before RICE, P. J., PORTER, HENDERSON, MORRISON,
HEAD and BEAVER, JJ.  Affirmed.

Bill in equity for an account.

YOUNG, J., filed the following opinion :

The bill in this case was filed by the plaintiffs, alleging that John J. Roeser was a stockholder and a borrower from the defendant association to the amount of $2,600, for which loan he gave his bond and mortgage, dated May 7, 1897, on his leasehold situate in the city of Allegheny; that on April 25, 1900, he assigned said leasehold to Peter and J. F. Rehn; that about the same date he assigned to them his twenty-six shares of stock in the association; all of which was done with the knowledge and consent of defendant. That the plaintiffs have, from April 14, 1897, to February 5, 1905, paid to the defendant upon the mortgage ninety-four months' dues upon the stock at the rate of $13.00 each month, or fifty cents upon each share, amounting to $1,222; and during the same time ninety-three monthly premiums of $13.00 each, being at the rate of fifty cents per share of $100, as fixed by the by-laws, amounting to $1,209; and also ninety-three monthly installments of interest of $13.00 each, amounting to $1,209, and that the defendant has credited the plaintiff with $353.24 dividends, altogether amounting to $3,993.24. That the premiums are illegal, and that the plaintiffs are therefore entitled to have said sums of $13.00 monthly paid as premiums credited to the principal as of the date of payment, and either to have the interest correspondingly reduced as of the date of payment or to have interest on account of said payments of premiums, from the date of payments, added to their credit. That all these payments have more than paid the amount of the mortgage, but that defendant claims there is a balance of $1,084.76 still due from plaintiffs to defendant.

The prayers are to permit plaintiffs to pay into court the sum of $1,084.76, the balance claimed by defendant, and therefore the mortgage be ordered satisfied; that an account be stated between the plaintiffs and the defendant, and if any balance be found due to the defendant that it be paid out of the money in court; but if the mortgage be found to be overpaid, then the amount of overpayment to be paid by defendant to plaintiffs and the money in court returned to plaintiffs. The money was paid into court and the mortgage was satisfied of record.

This raises practically the single question, " Are the premiums illegal? " If they are legal, then the money in court must be paid to the defendant. If they are not legal, then an account must be stated, which will raise the subsidiary questions as to whether or not plaintiffs are entitled to have the payments of premiums applied to the reduction of principal and to have interest upon such payments, or its equivalent.

The facts bearing upon the question of the payment of premiums show that John J. Roeser, desiring a loan of $2,600 upon his leasehold, applied to the defendant, and by the direction of the defendant became a subscriber for twenty-six shares of stock of defendant association at the par value of $100 each, and that thereupon he signed a written application for the loan, stating the value of the leasehold and improvements, rental value, and many other particulars as to it.

There is some evidence that Roeser authorized Waldschmidt, a director of the association, through whom he was negotiating for the loan, to attend to all matters for him, including the bidding for the money, although there was no written authority presented as proof in this case. The evidence also indicates that Waldschmidt appeared at the meeting and bid fifty cents for each $100 borrowed, or $13.00 per month for the money, although there is no evidence showing that there were any other bidders present or that there was any competitive bidding whatever for the money. Section 39 of the by-laws of the association contains the provisions:

" The rate of interest on all loans shall be 6 per cent. per annum, and the premium shall be fixed at fifty cents per month for each $100 borowed."

From the evidence we conclude that the loan was made to the plaintiff at a premium of fifty cents per month on each $100 borrowed, without any lower bid having been asked for and without any competition in the bidding whatever. Under the rule in the case of Stiles's Appeal, 95 Pa. 122, this is illegal and usurious, and can be set up by way of defense in an action against a borrowing stockholder. If it can be there set up, there can be no question that in a proceeding in equity to have the mortgage satisfied and the incumbrance removed from the property, the court will state an account and apply the same

rules as though it were a defense to the mortgage or bond or an action to recover the loan. If this be so, then the only question is whether the act of June 4, 1901, "conferring upon mutual savings fund or building and loan associations, now incorporated or hereafter to be incorporated, the right to receive, in writing, bids of premium for priority, and making valid all such bids heretofore accepted," affects this case.

It is true that the act provides, "And all such bids heretofore accepted by any such associations, and loans made thereon, are hereby confirmed and made valid; and no premium or bonus heretofore collected, or which may be hereafter payable on such loans, shall be deemed usurious by reason of the fact that any such bid was made or authorized in writing;" but we do not think the act permits the money to be loaned at a premium unless there is competitive bidding. It may have been intended to do away with competition, and so meet the condition in Stiles's Appeal and the other cases since that time. It does authorize submission of bids in writing, but does not authorize the practice of fixing a minimum premium, and receiving no bids below that, or of awarding the money at the premium bid, unless there were no other bids either in writing or by viva voce made for the money. In short, it does not warrant the charge of a premium unless there was competitive bidding.

The language of Judge SHARSWOOD, "They are bound to offer all that is in the treasury to open competition, so that members may obtain a loan at a low premium, if there should be no bid at a higher" (Stiles's Appeal, 95 Pa. 122), is just as true to-day as it was when written, notwithstanding the act of June 4, 1901. Nor can the defendant set up in answer to the claim of usury that each payment of the premium was a distinct transaction, and that the limitation would run from that time, and thus prevent the plaintiff from setting it up as a defense to the mortgage. Stiles's Appeal is authority for the rule that it can be set up. Plaintiffs claim also that they are entitled to interest upon the premiums paid, as their payment was a reduction of the amount of the principal, and that therefore they have paid interest on money which had been paid. We cannot sustain that claim. Section 21 of defendant's by-laws, "Exhibit No. 1," provides:

"Running stock shall be paid for in monthly installments of fifty or seventy-five cents per share, with the privilege to members of paying additional sums at any time and receiving credit therefor, together with interest at the rate of 6 per cent. for the average time amounts so paid are in advance. Installments are due and payable on the last day of each and every month until the stock matures."

But this certainly applies to payments made by members upon stock and receiving credit therefor at the time of such payment. The plaintiffs neither said at the time of bidding the premium that they were to be applied to the stock, nor did they request any credit therefor, nor did either the plaintiffs or the defendant ever suppose when the payments of premium were made that they were to be applied to the stock, but both supposed they were just what they purported to be, the payments of premium for the loan, in addition to the interest ; and it was not likely that, until this case was prepared for filing, the plaintiffs ever supposed that the premiums were illegal. The plaintiffs, having come into a court of equity, must do equity, and it would be against equity to charge the defendant with interest, ignorant as it was that it was receiving money upon which interest would be required, and especially after it has distributed this money in dividends to the stockholders. Plaintiffs are clearly estopped by their application for the loan, by the bond wherein Roeser promises for himself, and, if he was acting for the other plaintiffs, promises for them to pay the premiums, and having paid them, while the law will allow him to have credit for them upon the loan, it will not enrich him by awarding him damages; that is, interest for his voluntary payments, even though they were illegal. The plaintiffs having waived at trial all right to any part of the dividends or profits, this credit allowed them by the computation of defendant will not be allowed. All that plaintiffs are entitled to have credit for is the amount paid by way of premiums, $1,209, which will be applied to reducing the principal.

From the pleadings in this case, and the evidence, the court finds the following facts :

### FINDINGS OF FACT.

1. The defendant, the German National Building and Loan

Association, is an association incorporated under the laws of the state of Pennsylvania.

2. The 39th section of the by-laws of this association provide :

" Loans will be made as fast as the funds of the association will permit. Members holding stock upon which three months' installments have been paid are entitled to borrow on proper security the face value of their stock, or $100 per share. The rate of interest on all loans shall be fixed at fifty cents per month for each $100 borrowed. In addition to the interest and premium, the monthly installment paid by the borrower shall be fifty or seventy-five cents per share, and from such payment the premium and interest due on the loan shall be deducted and the balance credited as an installment on the stock on which the loan is borrowed."

3. John J. Roeser, of plaintiffs, became a stockholder of twenty-six shares of the par value of $100 each of the stock of the defendant association in April, 1897, and about the same time applied for a loan of $2,600, for which latter, on May 15, 1897, he gave his bond and mortgage, by which he became bound to pay defendant association monthly the sum of $13.00 upon his twenty-six shares of stock, $13.00 interest upon his loan of $2,600 and $13.00 premium for the loan.

4. That John J. Roeser assigned his stock to Peter and J. F. Rehn, his coplaintiffs, some time in April, 1900, and they, with the knowledge and consent of the defendant, assumed the payment of the loan, at the same time taking an assignment of the leasehold, on which the mortgage was an incumbrance.

5. That John J. Roeser, Peter Rehn and J. F. Rehn from April 14, 1897, to February 5, 1905, have paid into the association the following sums of money : dues upon the twenty-six shares of stock, being for ninety-four months at $13.00 per month, $1,222 ; ninety-three monthly premiums of $13.00 each, $1,209, making a sum of $2,431 ; ninety-three monthly installments of interest of $13.00 each, $1,209 ; and that they, Peter Rehn and J. F. Rehn, were at that time furnished with a statement showing the balance of $2,172.93 claimed by the association upon the loan, and that they continued thereafter to pay said dues, premiums and interest.

6. That at the time of making application for the loan John J.

Roeser authorized Frederick Waldschmidt, a director of the defendant association, and through whom he was trying to borrow money, to bid a premium for him of fifty cents per month on each $100 borrowed, and that Waldschmidt did so bid at the regular and open meeting of the board of directors of the association; and the money was thereupon awarded to Roeser; and that Waldschmidt reported this action to Roeser, who thereupon signed the bond, mortgage and other necessary papers and commenced and continued the payments of dues, premiums and interest, as set out in the fifth finding of fact.

7. That at the meeting when the bid of Roeser was submitted by Waldschmidt no other person bid for the money, and no other bid was offered for the money, and the money was awarded to Roeser upon his bid of fifty cents per month for each $100 borrowed, although no other bid was made for the money.

8. That prior to the filing of the bill in this case none of said plaintiffs ever either requested or demanded that the money paid as premiums should be applied to the stock or mortgage debt.

9. That the plaintiffs are indebted to the defendant in the difference between

| | |
|---|---:|
| The amount of the loan, . . . . . . . . . | $2,600 |
| And the interest thereon, . . . . . . . . | 1,200 |
| And the insurance premiums paid, . . . . . | 60 |
| · Or the sum of . . . . . . . . . . . | $3,869 |

And the credit of the following sums:

| | | |
|---|---:|---:|
| Amount paid on stock, . . . . . . | $1,222 | |
| Premiums paid on loan, . . . . . . | 1,209 | |
| Interest paid on loan, . . . . . . . | 1,209 | |
| Or the sum of, . . . . . . . . . | | $3,640 |
| Or the sum of, . . . . . . . . . | | $ 229 |

10. The plaintiffs paid into court pursuant to order of the court, dated February 18, 1905, the sum of $1,084.76 and the prothonotary's commissions upon the same.

### CONCLUSIONS OF LAW.

1. The premiums charged plaintiffs and paid by them to de-

fendant are illegal and usurious, because they were not determined by competitive bidding as required by law.

2. The plaintiffs are entitled to credit on their loan for the sums paid as premiums, to wit: the sum of $1,209, being for ninety-three months at $13.00 per month.

3. The plaintiffs are not entitled to have the premiums credited on the loan or stock as of the time of payment, thereby reducing the loan or amount due on the stock as of those dates respectively, thereby reducing the amount of interest payable as of those dates; nor are they entitled to interest on those payments as of the date of their payment.

4. The plaintiffs are indebted to the defendant as follows:

| | |
|---|---|
| To loan, . . . . . . . . . . . . . . . . | $2,600 |
| To interest, ninety-three monthly installments of $13.00 each, . . . . . . . . . . . . | 1,209 |
| To insurance premimus paid, . . . . . . . . | 60 |
| Making a total of . . . . . . . | $3,869 |

And plaintiffs are entitled to credit for the following payments:

| | |
|---|---|
| By ninety-four monthly installments of dues of $13.00 each, . . . . . . . . . . . . | $1,222 |
| By ninety-three monthly installments of interest of $13.00 each, . . . . . . . . . . . . | 1,209 |
| By ninety-three monthly installments of premiums charged for loan of $13.00 each, . . . . | 1,209 |
| Making a total of . . . . . . . . | $3,640 |
| And therefore plaintiffs are chargeable with the sum of . . . . . . . . . . . . . . . | $3,869 |
| And are entitled to credit for the sum of . . . | 3,640 |
| And plaintiffs are still indebted to defendant in the sum of . . . . . . . . . . . | $ 229 |

5. The costs of this proceeding are placed upon plaintiffs, and are to be deducted from the money in court.

6. The money paid into court, as per order of this court, at this number and term, dated February 18, 1905, to wit: the sum of $1,084.76, shall be distributed as follows:

To the prothonotary for the costs of this proceeding.

To the defendant in full payment of its loan, $229.

To the plaintiffs the balance of said sum in court, after deducting the costs of this case and the amount due defendant as above mentioned.

*Error assigned* was the decree of the court.

*A. E. Weger,* for appellants, cited: 'Bates v. Peoples' Savings, etc., Assn., 42 Ohio, 655; Moore v. Cameron B. & L. Assn., 74 Mo. App. 468; Endlich on Bldg. Assn., 2d ed., sec. 407; Gray v. Baltimore B. & L. Assn., 48 W. Va. 164 (37 S. E. Repr. 533); Floyd v. Nat. Loan, etc., Co., 49 W. Va. 327 (38 S. E. Repr. 653); McConnell v. Cox, 50 W. Va. 469 (40 S. E. Repr. 349); Washington Nat. B. & L. Assn. v. Andrews, 95 Md. 696 (53 Atl. Repr. 573); Brown v. Archer, 62 Mo. App. 277; Lewis v. B. & L. Assn., 183 Mo. 351 (81 S. W. Repr. 887); Post v. Mechanics' B. & L. Assn., 34 L. R. A. 201; Spinney v. Miller, 114 Iowa, 210 (86 N. W. Repr. 317); Com. v. Globe Mut. B. & L. Assn. 13 Pa. Dist. Rep. 477; Twin Cities Nat. B. & L. Assn. v. Lepore, 17 Pa. C. C. Rep. 426; Mercantile Trust Co. v. Jones, 48 Pitts. L. J. 266; Bosler v. Rheem, 72 Pa. 54; Duquesne Bank's App., 74 Pa. 426; Mellon's App., 7 Atl. Repr. 201; Trusdell v. Dowden, 47 N. J. Eq. 396 (20 Atl. Repr. 972); Earnest v. Hoskins, 100 Pa. 551; Blim v. Wilson, 5 Phila. 78; Butler v. Mutual Aid, etc., Co., 94 Ga. 562 (20 S. E. Repr. 101); Douglass v. Kavanaugh, 90 Fed. Repr. 373; Schutt v. Evans, 109 Pa. 625; Hawkins v. Welch, 8 Mo. 490; Phelps v. Bellows, 53 Vt. 539.

*Joseph A. Langfitt,* of *Langfitt & McIntosh,* for appellee, cited: Stiles's App., 95 Pa. 122; Orangeville Mut. Savings Fund & Loan Assn. v. Young, 9 W. N. C. 251; North America Bldg. Assn. v. Sutton, 35 Pa. 463; Spring Garden Assn. v. Tradesmen's Loan Assn., 46 Pa. 493; Phila. Mercantile Loan Assn. v. Moore, 47 Pa. 233; Economy Bldg. Assn. v. Hungerbuehler, 93 Pa. 258; Watkins v. Building & Loan Assn., 97 Pa. 514; York Trust, etc, Co. v. Gallatin, 186 Pa. 150; Hazel Loan & Bldg. Assn. v. Groesbeck, 17 Phila. 242; Good v. Grant, 76 Pa. 52; Maher's App., 91 Pa. 516.

PER CURIAM, November 19, 1906 :

The six judges who heard this case being equally divided in opinion, the decree is affirmed.